the fourth district appellate court of the state of illinois has now convened the honorable thomas m harris presiding good morning this is case number 4-24-1022 people versus mckinney council uh first may we have appearances uh for the appellant james waller for the appellant and for the appellee david mentioned with illinois appellate prosecutor for the state all right uh before we proceed uh to uh hearing argument on the case this morning i'd like to address a couple of matters uh first uh i wish to note that this case had previously been set for oral argument uh for may the 6th uh at one o'clock the court uh was ready to proceed mr waller was present mr mansion uh you were not present uh and before we begin um we're going to ask that you first explain the circumstances as to why you did not appear for argument on that date uh there are a couple of other uh matters that i'd like for you to also address uh one of which is there was a motion to reset oral argument that was filed by uh the uh uh appellant in this case and based on my review of the uh the record here it doesn't appear that there was ever a response filed by the state to the the motion in the body of the the motion it states in paragraph 9 that a draft of the motion was forwarded uh to council for the state on may the 13th uh but that the state had not responded to appellant's counsel's attempt to meet and confer regarding uh the uh the substance of the the motion uh so question then to you would be did you uh respond uh to counsel for appellant and if not why not and then a third uh matter uh would pertain to the uh the prayer for relief in the motion now uh appellant does not affirmatively request uh that we find uh the state's uh that the state has forfeited its opportunity to present oral argument but indicates it should be left to the discretion of the court uh in your comments you may wish to address that portion of the prayer for relief as well so you may proceed mr mansion first with regard to the may argument i had a uh a migraine headache that morning and i laid down with my alarm on uh at 11 a.m with the alarm set for 45 minutes i woke up at 4 p.m that day i called the court and explained the circumstances the next day uh that's why and i apologized court to that it was just uh beyond my control uh as far as the uh motions to reset i just did not see that there was any reason to respond to it i didn't see anything to object to and i had uh uh i had not before it was filed i had not seen anything as asking for whether i had any objection or anything like that and when it was filed i just did not see any need to respond to it that's the only thing i have to say about that let me ask you this before you get to the third item which is whether or not the state should forfeit its right to present oral argument uh and that is just simply did you reach out uh to counsel for repellent after missing argument uh to explain the circumstances uh of of your having missed uh oral argument no i i apologize for that i did not i reached out to the court to explain and i was going to contact counsel but then uh forgotten and it got onto other matters and never got around to it uh i apologize to counsel for that all right as to uh wishing to present oral argument here today uh if you wish to speak to that uh if oral arguments can be presented i would like to respond uh i have no uh it was defendant's request for oral argument i requested it only in response to that i uh after this after the supreme court ruled on the armed habitual criminal uh charges i really don't know whether what point will really be served by oral r because this can be solved on the briefs but i am able and willing to participate in an argument if the court deems that i should not participate that's within your prerogative okay i'm going to ask if my colleagues have anything to add or to ask of you but before i do that i will just uh uh provide one editorial comment and that is in this uh situation the one thing that i can see which is a glaring omission is i believe that you should have reached out to mr waller uh following oral argument to explain your absence uh and i think that as a professional courtesy was warranted yeah i agree justice zinoff justice leonard do either of you have anything you wish to ask yes um not really to ask but to underscore um justice thomas what you said this is a very serious matter and the court takes um oral argument as well as appearances of counsel and missing an oral argument very seriously but underscoring all of that is professionalism and mr mansion um it's my understanding you've practiced quite a long time professionalism should be ingrained at this point and a simple phone call to co-counsel who waited an extra hour took time out of his day away from other matters to abide by the request of the court and quite frankly for you to have said that you forgot um is is just incredulous to me quite frankly and other matters excuse me excuse me sir i'm speaking and so um it seems to me that this should have been top on your list to make a phone call to opposing counsel in this case to explain what had happened and to apologize to him and certainly under those circumstances i would have thought a response to his request to meet and confer regarding his motion before presenting it to this court would have also been a top priority so i just want you to understand that i underscore what justice harris told you and would expect that this would be part of how you practice law going forward all right justice lannard i will echo the sentiments of my colleagues and simply add i think at that point for some reason you did not see the request to confer on the motion at a minimum there should have been a response immediately filed to the motion because the motion in the prayer for relief is indicated at least alludes to the request that perhaps the state not be allowed to participate in oral argument so um i think professionalism is key and i think justice enough and justice harris have outlined why that is so important and so it is certainly disappointing to learn that even as we sit here on july 1st when this matter was set back in may there's been no contact with counsel regarding the failure to appear at oral oral argument okay i thank my colleagues then for their comments uh as well uh mr mansion um uh i'm going to trust that this is something that uh we will not see again and i hope our comments have not fallen on deaf ears um at this time we will proceed with argument of the motion that was filed by appellant motion to reset oral argument uh is simply going to be denied as moot we have reset oral argument and we are ready to proceed here this morning so mr waller are you ready to proceed with argument i am your honor thank you all right you may uh you're muted i apologize thank you um i want to also note i i appreciate the apology for mr pat mention so i just heard may please court and counsel my name is jim waller i'm with the appellate defender's office it's my pleasure to represent troy mckinney before you here today i appreciate the court's time this morning i intend to use it to explain why troy is entitled to a new trial as the court's aware as counsel's aware supreme court has decided people v wallace that case adopted the state's interpretation of the armed habitual criminal statute i accepted it generally forecloses our first argument we asked the argument be preserved but i'm not going to dwell on it today that leaves us with the problems of the trial itself specifically the court's conduct and defense counsel's lack of response to that conduct as well as other failures the judge's comments in this case supplanted the jury's exclusive role this case was always going to rise and fall on credibility and the precise timing of when troy left the house and why there were no fingerprints on the weapon no unbiased witnesses no conclusive evidence of ownership or possession of the weapon the jurors had to decide whether to believe the state's theory the troy ran outside to move a gun from a vehicle because he heard ms adams call the police or the defense's theory which maintained that the gun found outside the apartment was not troy's and that he never even knew the police had been called the court has already identified this as an important question in this case in that delicate credibility context a neutral referee is crucial but the record shows here that judge lyons stepped out of his lane again and again placing the full weight of the bench on the prosecution's side of the scale he misstated critical facts mid-trial judge lyons informed the jury on his own initiative that ms adams had testified that troy quote went outside because i called the police unquote that statement never appeared in the evidence ever in this trial that because meant everything it turned an ambiguous exit choice stepping outside before officers arrived into proof of consciousness of guilt that ambiguity was the entirety of the evidence on that point until the court created the consciousness of guilt by making that up judge lyons also added editorial asides that telegraphed a bias against the defense when defense counsel is asking questions to clarify the order in which things happened the judge announces them 305 i think we know what happened here well you may but i got i need to talk to here your honor those nine words told the jury that the court had already made up its mind about who was telling the truth but then judge lyons went on for the rest of 305 into 306 telling the jury what he thinks happened and what he believes people testified to he totally glossed over details and timing that mattered particularly in a domestic battery trial saying that ms adams somehow got butter on her somewhere along the way the defense counsel was arguing that physical aggression by adams precipitated the struggle but the court telling the jury that she got butter on her somewhere along the way in a passive voice trivialized that argument and ignored the defense's theory that these things were caused by adams's own aggression and actions and then he just flat out demeaned the defense's theory when counsel tried to suggest that ms adams might be the aggressor the judge scoffed telling the jury that a contract case or civil court was the proper form for that argument i presume the judgment a tort case but either way it wasn't just a non-sequitur it told the jury that this perfectly legally appropriate defense had no place in the trial all of these things reinforced a non-existent timeline the court's running narrative enshrined the idea that the 911 call preceded troy's departure and thus created that consciousness of guilt even though the record never fixed that sequence is occurring the court cut off defense counsel's attempts to clarify that sequence illinois law makes reversal mandatory when the judge's words imperil the jury's independence and people be sprinkle supreme court held the juror judge may not convey comment in a way excuse me that conveys to the jury an opinion as to the credibility of a witness and people be kelly first district emphasized that even a taint on the verdict must be removed to protect and preserve the integrity of the process the u.s supreme court goes further still in tomb of ohio that case teaches us that due process is offended not only by actual bias but by the mere possibility of bias here the bias is demonstrable leading to a due process violation on the record the state argues that the jurors were instructed to rely solely on the evidence but as we point out in our brief our supreme court caused caution that jurors are ever watchful of the trial judge and noted that judge's slightest words may prove controlling people be marino a hostile attitude towards an accused is very apt to influence the jury in arriving at its verdict which requires reversal under kelly now to affirm the statement showed beyond a reasonable doubt that their error had no effect on the verdict in a case hinging on whether troy knew the police were coming the judge's statement creating that knowledge out of nothing can't be harmless it's something the state it's a burden the state just can't shoulder here excuse me mr weller i do have a question and looking at all of this don't we need to really look at the context and the circumstances that prompted the judge to make comments in the first place and wasn't that during the course of cross-examination and if we look at that um certainly we know that the judge has um has to rule on any objections and also certainly has um it's permissible for a judge to really circumscribe cross-examination to make sure it's not too repetitive too lengthy um it's within the scope of what the question was and so a trial judge does have the right to insert himself or herself under those circumstances isn't really that what we have here you're right the judge has the ability to do that and the right to do that that's not what occurred here um most of these comments not all of these comments came in response to objections one of them did when when when counsel says what did the butter just walk off by itself or did the grocery walk off by themselves state says objection argumentative instead of just saying what a reasonable judge would say what a proper neutral arbiter would say which is sustained or overruled or let's hear some argument about it the judge just just restated what the judge believed the evidence to be so the the judge can do those things without inserting himself into the juror's role um also as far as circumscribing because you're right it is a claim of ours that the judge basically cut off defense cross-examination here the judge can do that on a lengthy or repetitive cross-examination we know that it's not lengthy because this is a very short case we're almost through the trial and we're on page r-306 here uh we know that it was not repetitive because many of these questions still remain unanswered as this court found in the original appeal these are important questions that were unanswered so they couldn't have been repetitive if they were never addressed in the first place um and as far as clarifying the evidence the way a court generally the way a court properly clarifies the evidence is by asking follow-up questions after the questioning to that i mean that's how it's been in my 18 years of experience the judge will say you might have asked some questions and may walk through a couple of questions the judge doesn't clarify the evidence by telling the jury what the evidence is that's absolutely that falls well outside of the definition of clarifying and well outside of what the court's allowed to do so all of those things and again there are certain circumstances where we would give the court the benefit of the doubt um and we would say on a cold record it's hard to say that this is this telegraphed in a real bias against the defense um judge Lyons has lost the benefit of the doubt in this case in this case if if nothing else um the i i i generally cited to all of his comments and behavior during pre-trial during post-trial those are maybe more relevant on the first appeal so i kind of summarized them here but you know you did everything but beat your chest i'll give you something to cry about you want to go to jury trial i'll take you to jury trial let's go tomorrow well he didn't even have an attorney in the room like there was bias against the defense throughout the whole trial and that was clear and there's no benefit of the doubt that it wasn't clear coming through on the record here so because of the judge's behavior on its own a new trial is is required now this case this remanded the case back um to determine why defense counsel did not object to these statements by the court um and what we got was an answer uh counsel's fear-based silence satisfies both prongs of Strickland um now we know because of the remand counsel testified that he objected to the trial court's remarks or excuse me that he recognized the trial court's remarks misstated the testimony but he refrained from objecting because these are his words quote it would not endear me to the court unquote and it might quote be problematic for my client unquote if he simply objects to testimony from the court that he knows is wrong that admission like i said checks both boxes under Strickland it's deficient performance because objecting to invented evidence is not a tactical nicety it's defense counsel's sole job in description be it counsel shows personal rapport with the judge over his client's right to a fair trial and we know it's prejudicial because the judge's remarks alone supplied the sole direct evidence of choice knowledge that a gun even existed let alone that he knowingly possessed it went out and moved it without an objection the jury heard that uncorrected and no curative instruction was fought was given so all we need to show is a reasonable probability even less than 50 percent that a different outcome would have may have occurred here that's not very speculative it seems overwhelming when there's no other evidence on this point but the deficient conduct didn't end there counsel all tells testified that he never reviewed discovery with troy after the state elevated the charge to a class x behavior that the circuit court called stark and jumping off the page before ignoring on remand said i guess it's no big deal um he chose not to subpoena the 9-1-1 recording because in some cases there's prejudicial information on them strategy divorce from investigation is not strategy counsel had a duty to make a reasonable investigation or to make reasonable determinations that investigation wasn't necessary simply not subpoenaing that 9-1-1 call which was in law enforcement's possession was not reasonable you cannot decide how to defend if you never learn what you're defending against so counsel's candid testimony leaves us the binary conclusion excuse me one of these two things has to be true either his fear was well-founded and judge lyons would indeed punish objections in which case the trial was tainted by judicial intimidation requiring a new trial under argument two or the trial the fear was irrational and counsel's silence was objectively unreasonable under strickland requiring a new trial under argument three excuse me under either alternative the sixth amendment was violated and the conviction can't stand the american jury trial is built on two pillars an impartial judge and zealous unafraid advocacy in choice case both of those pillars cracked one under the weight of the judge's own words and behavior and the other under the weight of counsel's fear of that behavior the constitution does not permit a conviction erected on such a foundation to stand when the judge demonstrates this kind of bias intentionally or otherwise and defense counsel feels too cowed too too intimidated to object the case must be retried so we ask this court to vacate remand for a new trial thank you if there are no other questions i'll speak with you again shortly all right thank you you'll have time and rebuttal mr mansion it leaves the court counsel in this case the trial court's remarks could not have deprived the defendant of a fair trial defendant continually states that whether he knew the police were called before he left the house was key or central to the case that is simply not true the evidence showed that the defendant was standing by the car as the police arrived and he's walking away from the car as the police arrived if i recall correctly the flashing lights were on on the police cars on the shoulder cam but at least the police were visible in the thing because you can see him walking away from where the gun is found on the police camera he knew the police were there and had to get rid of it there whether or not he knew beforehand that the police had been called and as far as the prejudice to the all the court's remarks went primarily regarding the circumstances of the domestic battery of which the defendant was convicted uh was acquitted excuse me the acquittal shows that the jury was not being misled was not being to uh convinced that they could only or were only required to consider one charge they could because they considered both they were instructed as to both the signed verdicts different verdicts as to both the court's remarks were uh proper within the scope to clarify evidence to respond to objections and it did not direct a verdict for the defendant or show the state an opinion as to  in terms of the credibility or this uh weight of the evidence or tell the jury what uh a verdict they should uh answer so i don't believe that the trial judge's remarks are sufficient in this case to require reversal regarding counsel's performance counsel if i may mr manson there before you when it comes to the issue where the court states he went outside because i called the police when he's talking about ms adams testimony and he rephrases in that way um would you not concede that that is is inaccurate he is not the trier fact and that is not what she testified to her testimony was eventually he went outside yeah he went out the door did he leave with anything because i called the police that a reasonable interpretation of that is she the defendant left because i he went outside because i called the police uh it's not that blatant or uh mistake that much of a misstatement or a misinterpretation of that statement i think it could be an inference because i called the police i think it could be an inference but i i think the point is it is he was not the trial judge was not the trial fact we had the jury so while it's an inference it is not a specific quote as to what she testified to would you agree with that statement it's not an exact quote correct okay so even if we presume for the moment that that particular comment and and i'll say for the purposes of this hypothetical only that comment is improper then i guess specifically would you address counsel's suggestion though that this still this particular piece of evidence would have changed the outcome and specifically impacted the conviction if we find under my hypothetical that this is the only statement that was improper well the evidence regarding the uh gun charge was that the defendant was standing by the car walked away quickly as the police arrived the gun was found in the alley it was in a gun case that was described by uh the the girlfriend as being the defense gun case nobody leaves a gun laying in an alley unless you're dropping it to avoid the police given the timing of when the police arrived the timing when the defendant uh walked away from the car where the gun was found the similarity between the case found uh and the case described by the witness the uh conclusion that defendant was possessed that uh gun was overwhelmingly regardless of whether he knew not the 911 call was made beforehand because again the evidence showed that the defendant is walking away from the car as the police are arriving and as the police are walking towards that car you see him on the uh shoulder cam walking away from the car where the gun was found from the side of the car where the gun was found walking in a rapid what i would suggest would be a rapid to the pace the conclusion that that is his gun is inescapable regardless of whether he knew 911 was called before he left the building and i don't think his knowledge of the 911 call can be called central or key or pivotal in any sort of way or sort of form thank you okay and with regards counsel the testimony at the uh this was a full franklin hearing with a new uh attorney representing the defendant with testimony from both defendant and uh trial counsel so the standard is whether the uh decision made by the trial court below was manifestly erroneous erroneous and the trial court found that the question as far as both the failure to object and the lack of sharing discovery and the failed subpoena were all uh did not establish the ineffective assistance counsel and i believe that that decision is not manifestly erroneous with regard to the failure to subpoena the 911 tape counsel testified that he was familiar with his contents and uh was aware that it referred to a gun and he did not subpoena the tape for presenting the jury because he did not want the jury to hear that evidence of the witness on the phone referring to a gun because of the gun charge he also testified that he didn't want the jury to hear the contents of the tape because he didn't want to hear the uh uh tone of voice or whatever he was he was uh uh he just chose not to present the tape uh because of uh as a matter of strategy or uh tactics we cannot establish prejudice from the failure to uh subpoena the tape because that tape has uh is no longer in existence so any claim that there's something on the tape that would be helpful to defend it is pure speculation this was the decision not to present the tape and to a subpoena the tape was a matter of judgment or strategy and defendant cannot establish prejudice with regard to uh the discovery counsel testified that he had defendant read this discovery prior to the first trial that he went over the he reviewed the case with a defendant before the second trial but he did not have the defendant read discovery a second time for the second trial that is not ineffective assistance that is within a judgment of counsel as a how do you share discovery the new charge with the habitual criminal added nothing to the facts of the case or the underlying effects of the case and the uh increase in the charge was also no surprise to the defendant because he had been told long before that if he didn't take the a plea agreement the state was going to be bringing these greater charges and as far as the new charges that uh of uh habitual criminal with the prior offenses that requires at no consultation with the defendant regarding discovery uh for presenting the trial because the prior conventions are within the defendant's own and will have would have no uh bearing on how the case is presented to the jury uh again there is no showing of prejudice here there's no showing whether how letting the defendant read the uh discovery for a second time would have made made any difference as how the case was presented so there's no ineffective assistance regarding the uh alleged failure to share discovery because it was shared and the counsel testified and the court accepted his testimony that he had reviewed the case before the start of the second the next start of the trial and that he had not uh had provided the discovery to defend it again before the second trial because there was just nothing new that will require uh the uh sharing the discovery at that point now with regard to the court's remarks during trial the trial court found that that was not ineffective assistance of counsel that that was within uh the judgment of the court the of counsel not to object that uh we're trying to find the exact wording that the court used before it's on page 570 record 571 of the record i come down to the side that it did not impact the case such as any effective assistance for challenging it was not or would not have changed the outcome of the case or arguments that would have been made that is the trial court's ruling regarding the failure to object to the court's remarks that the uh counsel's failure to object could not have impacted the uh trial uh that opinion that decision that judgment is entitled to wait and can be disturbed only if manifestly erroneous and i don't believe it is counsel explained that he did not object because he was afraid of not only of the judge's reaction but how the jury would respond to any objection and it is uh uh it is within matter for counsel not to object to the matter for fear that the objection itself would draw more attention to the matter than not objecting so i submit that the trial counsel's handling of the court's remarks did not represent uh ineffective assistance of counsel did not represent deficient representation it was a reasonable on the spot decision by a attorney in the middle of the trial having to make a quick judgment and i think it's one that a reasonable attorney could have made or would have made in fact somebody else would or could have acted differently does not establish an effectiveness uh if there are no further questions i will stand on my argument all right thank you waller rebuttal argument thank you your honor um i guess to go through this chronologically it's not just me that's saying that this is an important question in the case or that this is a crucial question in the case um everybody on the zoom right now except for mr mansion has made this finding already it was basically law of the case in the previous appeal that said this was an important question in the case whether troy knew the police had been called whether he left before the 911 call had been made and i would you know the record stands it speaks for itself i would ask the court to watch that video because counsel has made several representations about the facts of the case that are simply not true the police car lights were not on the the officer approaches from the other side through through an alley from another set of residences from another street in the dark he's got his thing activated but he can't see much because it's dark and there are no police lights on as he's walking up troy is saying you're going to jail to ms adams so there's a maybe a against consciousness of guilt right there the officer walks up and turns his light on as troy is walking towards him he says put your hands up so troy's got his hands up and walking towards the officer you can say he was walking from where the gun was found you can say he was walking from the vehicle you can say he's walking from the back door of the house it's hard to tell what the layout you but you can't just say he's walking from that vehicle and ignore the entire rest of the world that's standing behind uh troy mckinney at that point uh other i mean and while we're talking about the record and what it actually says on on remand counsel did not testify about not subpoenaing the 911 call because he there was he's worried there was a gun mention of a gun on the recording or the tone of the voice that is entirely invented by mr mansion here for the oral argument he never says anything about that he only addresses uh he only says that um sometimes they say um you know i've had to call 15 times here i am speculating but counsel don't say anything about the gun or tone of voice um they just that it has oftentimes prejudicial information not anything specific about this case but just in his experience uh that they'll say oh yeah he's he's beat me up 15 times before he's worried that the jury might hear something like that but she doesn't even know because he didn't even listen to the recording and the fact that it was in law enforcement possession and not tended in discovery on its own frankly should have flagged to any reasonable criminal defense attorney that maybe it's not inculpatory maybe it's actually exculpatory um but i'll leave that aside um counsel never said anything about oh about being afraid to object because of how the jury would have interpreted that again that's pure invention today counsel said uh it would not endear me to the court um i didn't think it would go well for my client didn't say anything about about the jury's interpretation of that that was not part of his consideration it was purely fear and reticence a retribution from the court so all of these benefits the doubt counsel is trying to give um are come from him they're not on the record that's all i'll say about that um counsel's interpretation trying to uh speaking to justice lander's point about whether that one comment if nothing else is wrong counsel's interpretation that because he called he he left because i called i agree your honor that it is it would be an inference i don't know if it's even a reasonable one but it is an inference that's the jury's job but more than that it to it to buy counsel's reconstruction of that statement you have to pick and choose answers that didn't go with the questions um you have to choose non-responsive answers and put them to another question to establish anything remotely like he left because i called the police so there's no reasonable argument there's no reasonable argument that that that comment was was proper there were many other comments that were not proper taking them all together uh raise an unfair trial particularly when the reasons they were not objected to are not good ones that any zealous advocate we're not we're not called to provide reticent uh advocacy we're called to provide zealous advocacy and that didn't happen here in fact that's what the constitution requires so well if i can if i may mr waller uh quickly and i know you made a reference to the first issue you raised in your brief in light of people versus wallace and you made a statement along the lines well i preserve that argument but i guess i want to clarify before we end today are you conceding that people v wallace addresses the issues that you've raised are you somehow suggesting to this court that this case is distinguishable the facts of this case are distinguishable or are you conceding that it's dispositive of the issues you raised i i will say that i have not come up with an argument that it is not dispositive of argument one without saying that i concede argument one yes thank you i don't have anything to the contrary so with that in mind we ask for a new trial and thank you for your time okay thank you mr waller thank you both the case will be taken under advisement and the court will issue a written decision the court stands in recess